RENDERED: AUGUST 13, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1383-MR

COMMONWEALTH OF KENTUCKY                                    APPELLANT

FROM OLDHAM CIRCUIT COURT
v.      HONORABLE KAREN A. CONRAD, SPECIAL JUDGE
ACTION NO. 18-CR-00203

GARY GARDNER                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

LAMBERT, JUDGE: The Commonwealth of Kentucky appeals the Oldham

Circuit Court's order denying the Commonwealth's motion to present witness

testimony at trial via two-way videoconferencing platforms. Following a careful

review of the record and the law, we affirm.

On August 10, 2018, an Oldham County grand jury indicted Gary Gardner ("Gardner") for complicity to commit fraudulent insurance acts (over $500.00). A jury trial was scheduled in the case for October 19, 2020. At a status conference on October 1, 2020, the Commonwealth expressed interest in presenting trial testimony from an inmate in federal prison via two-way videoconferencing technology. Gardner's counsel objected to the use of remote testimony, and the trial court scheduled a hearing on the matter for October 7, 2020.

At the hearing, the Commonwealth made an oral motion to present a witness, Logan Silliman, via two-way videoconferencing platforms such as Zoom or Skype. Silliman was incarcerated at the federal correctional institution in Manchester, Kentucky. In support of its motion, the Commonwealth pointed to Kentucky Supreme Court Administrative Order ("Administrative Order") 2020-63(B)(1), which mandated Kentucky courts "hear civil and criminal matters using available telephonic and video technology to conduct all proceedings remotely."[1] The Commonwealth further noted that not only would the correctional facility's protocols in place at the time require Silliman to be quarantined for a 14-day period before he could be transferred to Oldham County, Silliman would have to

_____

[1] Administrative Order 2020-63 became effective on August 1, 2020 in an effort to address the health and safety of court employees, elected officials, and the public during the COVID-19 pandemic.

be quarantined for an additional 14-day period once he was transferred to the Oldham County jail.

Gardner's counsel again objected, arguing that allowing Silliman to testify remotely would violate Gardner's right to in-person cross-examination. By order entered October 7, 2020, the trial court denied the Commonwealth's motion to present Silliman's testimony via two-way video:

> The Commonwealth has not demonstrated that using Zoom or other video technology to secure a witness' testimony is necessary to further an important public policy. The Commonwealth has the ability to secure the witness' attendance by utilizing [Kentucky Revised Statute] KRS 455.150 – Procedure for bringing material witness in state felony trial from federal prison. Though the [c]ourt is cognizant of the threat of the [COVID-19] virus, especially to inmate populations, the [c]ourt believes the defendant's 6th Amendment Right to confront the witness is superior especially as the [c]ourt and [c]orrections take all steps necessary to limit the spread of the virus.
>
> For the foregoing reasons, the [c]ourt DENIES the Commonwealth's request to have its witness present his testimony via Zoom or another remote video technology.

The Commonwealth filed an interlocutory appeal pursuant to Kentucky Rule of Criminal Procedure (RCr) 12.04 and KRS 22A.020 seeking review of the trial court's order.

Before we reach the merits of the Commonwealth's appeal, we must first address Gardner's argument that the Commonwealth failed to comply with

Kentucky Rule of Civil Procedure (CR) 76.12(4)(c)(v). That provision requires an appellant's brief to contain a statement regarding whether arguments in the brief were preserved for appellate review.[2] Gardner contends that the Commonwealth failed to preserve the issues of whether *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990), and the Sixth Amendment right of confrontation apply to two-way video testimony. However, we "may decide an issue not briefed on appeal when that issue flows naturally under our appellate review of the issue raised." *Commonwealth v. Pollini*, 437 S.W.3d 144, 148 (Ky. 2014) (internal quotation marks and citations omitted).

The trial court denied the Commonwealth's motion, at least in part, because the Commonwealth failed to demonstrate that using Zoom or other video technology was necessary to further an important public policy. A determination of the applicability of *Craig* to the facts in the present case is necessary for this Court to address the merits of the trial court's ruling. Accordingly, we hold that any question with respect to the preservation of issues for appeal will not limit our review of the Commonwealth's claims herein.

---

[2] CR 76.12(4)(c)(v) provides that an appellant's brief shall contain "[a]n 'ARGUMENT' conforming to the Statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and . . . shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999); *see also Commonwealth v. Leahy*, No. 2001-CA-002726-DG, 2003 WL 1270525 (Ky. App. Feb. 7, 2003).[3] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

The Sixth Amendment to the United States Constitution provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI; *see also* KY. CONST. § 11 ("In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor.").

However, a criminal defendant's constitutional right to face-to-face confrontation is not absolute. *Sparkman v. Commonwealth*, 250 S.W.3d 667, 669 (Ky. 2008). Accordingly, in *Maryland v. Craig*, the United States Supreme Court held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial [(1)] only where denial of such confrontation is necessary to further an important public policy and [(2)] only

---

[3] Cited to demonstrate consistency among appellate decisions rendered in the Commonwealth.

-5-

where the reliability of the testimony is otherwise assured." 497 U.S. at 850, 110 S. Ct. at 3166.  The Court in *Craig* explained that "[t]he requisite finding of necessity must of course be a case-specific one:  The trial court must hear evidence and determine whether use of [platforms other than physical face-to-face testimony] is necessary to protect the welfare of the particular . . . witness who seeks to testify." *Id*. at 855, 110 S. Ct. at 3169.

Since *Craig*, neither the Kentucky Supreme Court nor the United States Supreme Court has addressed the issue of whether the *Craig* analysis applies to two-way video testimony.  However, the majority of federal and state courts have held that the *Craig* "necessity" standard must be satisfied before a witness may testify via a two-way videoconferencing platform.  *See, e.g.*, *United States v. Carter*, 907 F.3d 1199, 1208 n.4 (9th Cir. 2018); *United States v. Abu Ali*, 528 F.3d 210, 240-41 (4th Cir. 2008); *United States v. Yates*, 438 F.3d 1307, 1313-14 (11th Cir. 2006); *United States v. Bordeaux*, 400 F.3d 548, 554-55 (8th Cir. 2005); *State v. Mercier*, 403 Mont. 34, 45, 479 P.3d 967, 975 (2021) (noting that the "overwhelming majority of jurisdictions have applied *Craig* to two-way video procedures"); *State v. Rogerson*, 855 N.W.2d 495, 501-03 (Iowa 2014).

On appeal, the Commonwealth argues that we should apply the alternate approach to the issue of testimony presented via two-way video which was adopted by the United States Court of Appeals for the Second Circuit in

*United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999). In *Gigante*, the Second Circuit examined the trial court's use of a two-way videoconferencing platform in which the witness and the defendant could see one another during the witness' testimony. The court noted that the facts before it were different than those in the *Craig* case, which involved testimony using "one-way closed-circuit television, whereby the witness could not possibly view the defendant." *Id.* at 81. Thus, rather than applying *Craig's* "necessity" standard, *Gigante* held that in cases where two-way videoconferencing technology is offered:

> [a] more profitable comparison can be made to the Rule 15 deposition, which under the Federal Rules may be employed "[w]henever due to *exceptional circumstances* of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial." Fed. R. Crim. P. 15(a). That testimony may then be used at trial "as substantive evidence if the witness is unavailable." Fed. R. Crim. P. 15(e). Unavailability is defined by reference to Rule 804(a) of the Federal Rules of Evidence, which includes situations in which a witness "is unable to be present or to testify at the hearing because of . . . physical or mental illness or infirmity." Fed. R. Evid. 804(a)(4).

(Emphasis added.) In the case at bar, the Commonwealth asserts that, because the courtroom personnel could have arranged video cameras such that Silliman and Gardner could see each other, albeit virtually, the situation in this case is much more similar to face-to-face confrontation than the one-way closed-circuit system at issue in *Craig*. Moreover, the Commonwealth argues that there are sufficient

"exceptional circumstances" present in this case to dispense with Gardner's right to in-person confrontation, specifically, the highly contagious nature of the COVID-19 virus and the fact that the testifying witness is incarcerated. We disagree.

What is "necessary" under the *Craig* standard to allow witnesses to testify remotely is a high bar to meet. *See United States v. Casher*, No. CR 19-65-BLG-SPW, 2020 WL 3270541, at *4 (D. Mont. Jun. 17, 2020). Over the past year, numerous federal district courts have held that, absent a specific showing that an individual witness was particularly vulnerable to COVID-19, and that other precautionary measures would not adequately protect the witness, general concerns about the spread of the virus do not justify abridging a defendant's right to in-person confrontation. *See, e.g.*, *United States v. Kail*, No. 18-CR-00172-BLF-1, 2021 WL 1164787, at *1 (N.D. Cal. Mar. 26, 2021); *United States v. Pangelinan*, No. 19-10077-JWB, 2020 WL 5118550, at *4 (D. Kan. Aug. 31, 2020); *Casher*, 2020 WL 3270541, at *3.[4]

In the present case, the trial court, citing *Craig*, found that the Commonwealth failed to demonstrate that utilizing two-way video technology was necessary to further an important public policy. Further, the trial court pointed to KRS 455.150 to support its conclusion that the Commonwealth has the ability to

---

[4] We cite federal case law herein as persuasive, not mandatory, authority.

-8-

secure Silliman's attendance.[5]  In this case, there was no evidence presented by the Commonwealth that Silliman was particularly vulnerable to the risks of COVID-19 and that other precautionary measures, such as the correctional facility's protocols and the specific provisions of Administrative Order 2020-63(B)(2), would not adequately protect Silliman's health, or the health of other individuals in the courtroom.  Moreover, as noted by the trial court, Subsection 2 of Administrative Order 2020-63(B) left the decision of whether in-person attendance was required to the discretion of the trial judge.  Thus, we hold that it was within the discretion of the trial court to deny the Commonwealth the opportunity to present Silliman's

---

[5] KRS 455.150 provides:

> When a material witness for the Commonwealth in a felony prosecution pending in a court of this state is confined under judgment of conviction in any federal penal institution, the Commonwealth's attorney may enter into an agreement with the appropriate federal authorities for conveyance of the witness at the expense of this state to the Circuit Court in which the trial is pending, and after trial, for return to the federal penitentiary.  The Commonwealth's attorney shall move the Circuit Court for an order for the attendance of the witness and shall state the situation of the prisoner, the date set for trial of the case, the importance of his testimony to the Commonwealth, and the agreement of the federal authorities to produce the prisoner in court.  The Circuit Court shall designate the officer to transport and guard the prisoner and such person shall be reimbursed from the State Treasury for his expenses in the amount and manner provided in KRS 64.070(1); provided, however, that if a United States marshal or other federal official is designated by the court to transport and guard the prisoner such marshal or officer shall be reimbursed at the rate authorized by federal law or regulations.  The Circuit Court shall enter an order of allowance of expenses for the officer upon conclusion of the trial.

testimony via a two-way videoconferencing platform.

We find no error in the trial court's electing not to apply the minority approach of *Gigante*, *supra*. Even assuming, *arguendo*, that the trial court had applied the *Gigante* approach, the evidence provided by the Commonwealth would not have been sufficient to satisfy the "exceptional circumstances" test.

> Like the cases applying *Craig's* "necessity" standard, cases applying the "exceptional circumstances" test have required some specific showing of medical conditions or risks faced by particular witnesses to justify the taking of testimony using videoconferencing technology. *See Gigante*, 166 F.3d at 81 (citing "the medical evidence of [the witness's] poor health," and "the joint exigencies of [the witness]'s secret location [due to participation in witness protection program] and *Gigante's own* ill health and inability to travel"); *United States v. Benson*, 79 Fed. Appx. 813, 820-21 (6th Cir. 2003) (85-year-old witness who was "too ill to travel" from California to Cleveland due to "extensive health problems" and recent "major stomach surgery" which left her "underweight and fatigued"); *United States v. Akhavan*, No. 20-CR-188 (JSR), —— F.Supp.3d ——, ——, 2021 WL 797806, at *9 (S.D.N.Y. Mar. 1, 2021) (citing witness' need for cross-country travel, as well as "his age and comorbidities," to find "severe risks of severe illness or death" from COVID-19); *United States v. Davis*, No. 19-101-LPS, 2020 WL 6196741, at *4 (D. Del. Oct. 22, 2020) (relying on "a combination of [multiple witnesses'] distance from Delaware and his or her particularized risk factors"); [*United States v.*] *Donziger*, [No. 18-CR-561 (LAP),] 2020 WL 5152162, at *3 [(S.D.N.Y. Aug. 31, 2020)] (finding "exceptional circumstances" due to witness' age, documented health conditions which placed him at heightened risk from COVID-19, and need for cross-country travel and lengthy quarantine).

*C.A.R.A. v. Jackson Cty. Juvenile Office*, No. WD 83967, 2021 WL 2793539, at *8 (Mo. App. Jul. 6, 2021). As noted above, the Commonwealth did not present any evidence that Silliman was particularly susceptible to the risks of COVID-19, aside from the nature of his incarceration. The Commonwealth points to the general risks of potentially exposing multiple people to COVID-19 associated with transferring a witness from custody to testify in an in-person setting. However, as alluded to by the trial court in its order denying the Commonwealth's motion, general concerns about the threat of COVID-19 do not justify a denial of Gardner's confrontation clause rights, especially in light of the precautionary measures in place to limit the spread of the virus.

For the foregoing reasons, we affirm the Oldham Circuit Court's order denying the Commonwealth's motion to present a witness via two-way videoconferencing platforms.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Erin Hoffman Yang
Frankfort, Kentucky