# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: APRIL 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0511-MR

JACOB ABERCROMBIE                                         APPELLANT


             ON APPEAL FROM BRACKEN CIRCUIT COURT
V.              HONORABLE STOCKTON B. WOOD, JUDGE
                      NO. 21-CR-00043


COMMONWEALTH OF KENTUCKY                        APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>**

Jacob Abercrombie was convicted of first-degree rape (victim less than twelve years old), first-degree sodomy (victim less than twelve years old), and first-degree sexual abuse (victim less than twelve years old). He received a sentence of seventy years' imprisonment and appeals to this Court as a matter of right.[1] Abercrombie argues: (1) the victim was improperly permitted to testify outside his sightline; (2) he was entitled to a directed verdict of acquittal on all charges; and (3) the jury instructions violated his right to a unanimous verdict and the prohibition against double jeopardy. Because the jury instructions failed to adequately differentiate the instruction on sexual abuse from the instructions on rape and sodomy, we are constrained to reverse the

---

[1] KY. CONST. § 110(2)(b).

sexual abuse conviction. However, this error does not affect the validity of the rape and sodomy convictions. Therefore, we affirm in part, reverse in part, and remand for dismissal of the first-degree sexual abuse charge.

Abercrombie lived with his father and stepmother who often babysat the minor victim, A.R.[2] At all relevant times, Abercrombie was between 25 and 27 years of age while A.R. was between 6 and 8 years of age. A.R. would often go into Abercrombie's room and request to play video games. Since Abercrombie would not allow A.R. to play video games, she would play with her dolls on his bed.

At some point, when A.R. was six or seven years of age, Abercrombie began a course of ongoing molestation. After removing A.R.'s clothes, he would hold her on top of him and rub his penis on her vagina. A.R. would struggle to get away but was unable to break free from Abercrombie's grasp. The incidents occurred multiple times and caused A.R.'s vagina to hurt. Abercrombie also placed his penis in her anus and placed his mouth on her vagina and anus on multiple occasions. Abercrombie also touched A.R.'s vagina, anus, and breasts on more than ten occasions. He told A.R. not to tell anyone or else he would go to jail. A.R. testified that she did not tell anyone because she feared Abercrombie would kill her.

In April 2021, A.R. disclosed the ongoing abuse to her mother who contacted law enforcement. Kentucky State Trooper[3] Joshua Wise investigated

---

[2] To protect the victim's privacy, we refer to her by initials.

[3] By the time of trial, Trooper Wise had been promoted to the rank of Detective.

2

the allegations.  Trooper Wise contacted the Child Advocacy Center to arrange for a forensic interview of A.R.  Tasha Craft, a social worker and special investigator for the Cabinet for Health and Family Services, also interviewed Abercrombie, A.R., and several other witnesses.  Craft further conducted a walkthrough of the Abercrombie residence.  A.R. underwent a sexual-assault examination.  The physical examination revealed abnormal findings including very little tissue in the posterior half of the hymen as well as a notch on the hymen at the 9 o'clock position.  The examining doctor, Dr. Consuela Alley, concluded these findings were highly suggestive of vaginal penetration.

On August 19, 2021, Abercrombie was indicted on multiple counts of first-degree rape, first-degree sodomy, and first-degree sexual abuse.  The indictment was subsequently amended to charge Abercrombie with one count each of first-degree rape, first-degree sodomy, and first-degree sexual abuse as part of a continuing course of conduct pursuant to KRS 501.100.

A jury trial commenced on August 22, 2022.  Abercrombie testified in his own defense and denied the allegations.  He was found guilty on all three counts of the indictment.  The jury recommended a total sentence of 110 years' imprisonment, which the trial court properly reduced to the statutory maximum of 70 years' imprisonment.  This appeal followed.

## I. Trial court properly shielded child victim from visual contact with Abercrombie.

Abercrombie first argues the trial court erred by permitting A.R. to testify outside of his line of sight in the absence of compelling need.  We disagree.

3

Prior to trial, a guardian ad litem (GAL) was appointed for A.R. The GAL filed a motion to allow "testimonial accommodations" pursuant to KRS 421.350 and 26A.140. Specifically, the GAL requested the trial court to allow A.R. to testify outside of Abercrombie's presence. The GAL stated that A.R. feared Abercrombie and would likely be unable to testify in his presence. After a hearing, the trial court determined that a screen would be placed between A.R. and Abercrombie during A.R.'s testimony at trial. Abercrombie renewed his objection to the use of the screen at trial, which the trial court denied. A.R. testified from the witness stand with the screen shielding her from Abercrombie's sightline. Abercrombie was able to view A.R.'s testimony in real time on a video screen.

At the outset, we conclude KRS 421.350 is inapplicable to the present appeal. KRS 421.350 allows a child victim, under the age of twelve, to testify *outside* the courtroom via closed circuit equipment or video recording upon a showing of compelling need. By contrast, the use of a screen to shield a child victim from visual contact with the alleged perpetrator during *in-court* testimony constitutes an accommodation governed by KRS 26A.140(1)(d). A finding of compelling need is not required under this statute.

"In appropriate cases," KRS 26A.140(1)(d) mandates the use of "procedures . . . to shield children from visual contact with [the] alleged perpetrator." The standard governing such accommodations is whether the procedure used is "unduly burdensome to the rights of the defendant[.]" KRS 26A.140(1); *Walker v. Commonwealth*, 548 S.W.3d 250, 252 (Ky. 2018). In this

4

context, "a burden is 'undue' only when the defendant's rights are negatively and materially impacted by the contested action." *Id.*

Abercrombie has failed to demonstrate the accommodation by the trial court substantially interfered with his rights. In *Walker,* we reiterated "the primary right secured by the Confrontation Clause is that of cross-examination." *Id.* (quoting *Sparkman v. Commonwealth,* 250 S.W.3d 667, 669 (Ky. 2008)). In the present appeal, Abercrombie was able to view A.R.'s in-court testimony through a video monitor and consult with counsel in real-time. Without a concrete showing of prejudice, we cannot accept Abercrombie's claim of per se prejudice. We discern no error.

## II. Abercrombie was not entitled to a direct verdict.

Abercrombie next argues he was entitled to a directed verdict of acquittal on each of the charged offenses. We disagree.

The denial of a motion for directed verdict will not be reversed unless the appellate court determines "it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991). When confronted with a motion for directed verdict, the trial court must assume the truth of the Commonwealth's evidence and "draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Id.* A conviction must be based on "evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* at 188.

5

Direct evidence of guilt is not required to support a conviction. *Southworth v. Commonwealth*, 435 S.W.3d 32, 42 (Ky. 2014). A conviction may rest on purely circumstantial evidence if the Commonwealth can prove each of the elements of the offense beyond a reasonable doubt. *Id.* Similarly, the ability of a jury to draw a reasonable inference does not depend on the existence of direct evidence. *McGruder v. Commonwealth*, 487 S.W.3d 884, 890 (Ky. 2016). A reasonable inference arises from "a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven." *Id.* (quoting *Martin v. Commonwealth*, 13 S.W.3d 232, 253 (Ky. 1999)). Because a conviction may stand on circumstantial evidence, a reasonable inference may also be drawn from circumstantial evidence. *Id.* Ultimately, the directed-verdict standard depends on "the statutes creating the offense[,]" and "is not controlled by the law as described in the jury instructions[.]" *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020).

Each count of the indictment charged Abercrombie with engaging in a continuous course of conduct against a vulnerable victim under KRS 501.100, which provides in part:

> (1) As used in this section, "offense against a vulnerable victim" means any violation of:
>
> . . .
>
> (d) KRS 510.040 [first-degree rape], 510.050, 510.060, 510.070 [first-degree sodomy], 510.080, 510.090, 510.110 [first-degree

6

sexual abuse], 510.120, or 530.020, if the victim is under the age of fourteen (14), . . .

. . .

(2) A person may be charged with committing an offense against a vulnerable victim in a continuing course of conduct if the unlawful act was committed against the same person two (2) or more times over a specified period of time.

. . .

(4) To convict a person of an offense against a vulnerable victim in a continuing course of conduct, the jury shall unanimously agree that two (2) or more acts in violation of the same statute occurred during the specified period of time. The jury need not agree on which specific acts occurred.

When considering the sufficiency of the evidence to prove a continuing course of conduct under KRS 501.100, trial courts must remain mindful that "multiple similar offenses [cannot] be proven by mere mathematical extrapolation." *See Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002). Indeed, "[m]ere mathematical extrapolation of a described offense based on such vague testimony as 'almost every other weekend,' 'about ten weeks per year,' or 'every other time' will not support convictions of separate offenses." *Id.* However, this testimony remains highly relevant because "such evidence of other crimes of the same nature perpetrated against the same victim [is] admissible to prove intent, motive or plan to commit the specifically described offense." *Id.* at n.1. Thus, contrary to the Commonwealth's argument, A.R.'s testimony, that she was raped "more than ten times"—sodomized "more than ten times"—and inappropriately touched "more than ten times[,]" is insufficient, without further factual differentiation, to prove "that two (2) or

7

more acts in violation of the same statute occurred during the specified period of time." KRS 500.100(4). Nevertheless, upon consideration of the evidence as a whole, we are convinced the trial court properly denied Abercrombie's motion for a directed verdict on each of the charged offenses.

Under Count 1 of the superseding indictment, Abercrombie was charged with first-degree rape, victim less than twelve years old, in a continuing course of conduct. The elements of first-degree rape are set forth in KRS 510.040:

> (1) A person is guilty of rape in the first degree when:
>
> (a) He engages in sexual intercourse with another person by forcible compulsion; or
>
> (b) He engages in sexual intercourse with another person who is incapable of consent because he:
>
> > 1. Is physically helpless; or
> >
> > 2. Is less than twelve (12) years old.

KRS 510.010(8) defines "sexual intercourse" as:

> [S]exual intercourse in its ordinary sense and includes penetration of the sex organs of one person by any body part or a foreign object manipulated by another person. Sexual intercourse occurs upon any penetration, however slight; emission is not required. "Sexual intercourse" does not include penetration of the sex organ by any body part or a foreign object in the course of the performance of generally recognized health-care practices[.]"

A child victim's limited knowledge of sexual terminology does not necessitate further clarification or corroboration unless "the unsupported testimony of the victim is '. . . contradictory, or incredible, or inherently improbable.'" *Garrett v. Commonwealth*, 48 S.W.3d 6, 10 (Ky. 2001) (quoting *Robinson v. Commonwealth*, 459 S.W.2d 147, 150 (Ky. 1970)). Technical or

8

clinical descriptions of vaginal penetration are not required to sustain a conviction for rape: it is enough that the witness and jury knew what was meant by the words used "in the connection [the victim] used [them]." *See Taliaferro v. Commonwealth,* 151 Ky. 10, 150 S.W. 977, 978 (1912). Moreover, "[t]he fact of penetration may be proved by the circumstances." *Jones v. Commonwealth,* 833 S.W.2d 839, 841 (Ky. 1992) (quoting *Causey v. Commonwealth,* 550 S.W.2d 494 (Ky. 1977)). Specifically, we have recognized that "genital touching and resulting pain, taken together with . . . medical evidence" may constitute sufficient evidence of penetration. *Sharp v. Commonwealth,* 849 S.W.2d 542, 548 (Ky. 1993).

The evidence was sufficient to sustain Abercrombie's conviction of first-degree rape as part of a continuing course of conduct. It is undisputed that A.R. was less than twelve years old when the crime occurred. A.R. positively identified Abercrombie as the perpetrator. She stated the rapes occurred on the bed in Abercrombie's room when they were alone. A.R. testified that Abercrombie would rub his "pee-pee" on her "pee-pee." She clarified this terminology meant that Abercrombie would touch his "front" to her "front." A.R. described how Abercrombie would hold her on top of him so she could not get away. She stated these incidents hurt "on her pee-pee." A.R. also told her mother and Abercrombie's mother about her "pee-pee" hurting on multiple occasions. A.R.'s mother further described a specific occasion when A.R. returned from an overnight visit to the Abercrombie residence with a "brown stain" and "little brown speckles" in the crotch of her undergarments.

9

Additionally, Abercrombie's mother testified she called A.R.'s mother to ask permission to apply medication to A.R.'s vagina and anus on two separate occasions after A.R. complained of pain in those areas. Dr. Alley testified the physical examination of A.R. revealed "very little hymenal tissue remaining in the posterior half as well as a notch at 9 o'clock." Dr. Alley further opined these findings were "highly suggestive" of vaginal penetration. A.R. testified the abuse stopped after she told her mother and stopped going to the Abercrombie residence. While A.R. may not have precisely described the occurrence of penetration and other details concerning the events, the circumstantial evidence provided an adequate basis from which the jury could reasonably infer that vaginal penetration occurred on two or more separate occasions. Ultimately, we conclude "the evidence here was as specific as is usually found in such cases and ample to separately identify the various offenses charged." *Garrett,* 48 S.W.3d at 10.

Moreover, we cannot conclude the inconsistencies in A.R.'s testimony were so "contradictory, or incredible, or inherently improbable" as to require additional corroboration. *Id.* A.R. testified Abercrombie would close and lock his bedroom door when the abuse occurred. However, other witnesses testified Abercrombie's room had no door. Additionally, A.R. testified no one other than Abercrombie had ever touched her "pee-pee" and that her sister had never touched her "pee-pee." She further testified she never saw her mother and stepfather do anything with their "pee-pees." But A.R.'s mother testified she discovered A.R. and her sister "experimenting" with each other. When

10

confronted by her mother, A.R. stated she had witnessed her mother and stepfather having sex through a hole in the door. We reject Abercrombie's contention that these inconsistencies impacted the sufficiency of the evidence to support his convictions. Instead, these "discrepancies in the victim's testimony are matters of credibility going to the weight to be given by the jury to the child's testimony." *Garrett,* 48 S.W.3d at 10 (citing *Commonwealth v. Cox,* 837 S.W.2d 898, 900 (Ky. 1992)).

Under Count 2 of the superseding indictment, Abercrombie was charged with first-degree sodomy, victim under twelve years old, in a continuing course of conduct. KRS 510.070 sets forth the elements of first-degree sodomy as follows:

> (1) A person is guilty of sodomy in the first degree when:
>
> (a) He engages in deviate sexual intercourse with another person by forcible compulsion; or
>
> (b) He engages in deviate sexual intercourse with another person who is incapable of consent because he:
>
>> 1. Is physically helpless; or
>>
>> 2. Is less than twelve (12) years old.

KRS 510.010(1) defines "deviate sexual intercourse" as

> any act of sexual gratification involving the sex organs of one person and the mouth or anus of another; or penetration of the anus of one person by any body part or a foreign object manipulated by another person.

Penetration involving the sex organs of one person and the mouth or anus of another is not required to sustain a conviction for first-degree sodomy. *Bills v. Commonwealth,* 851 S.W.2d 466, 470 (Ky. 1993).

11

Based on our review of the record, we conclude there was ample evidence to support Abercrombie's conviction for first-degree sodomy as a continuing course of conduct. It is undisputed that A.R. was less than twelve years old at the time these crimes occurred. A.R. directly testified that Abercrombie placed his "pee-pee" in her "butthole." A.R.'s mother testified that A.R. was "constantly" complaining about her "butt" hurting. A.R. also directly stated that Abercrombie placed his mouth on her "butt and pee-pee." A.R.'s testimony concerning the anal intercourse, the oral-genital contact, and the oral-anal contact is sufficient to establish two or more separate and distinct instances of first-degree sodomy. Again, "[a] victim . . . is not required to use technical or anatomically accurate terminology in describing sexual abuse to support a conviction for sodomy when the words actually used are clear." 70C Am. Jur. 2d *Sodomy* § 54 (2023).

Under Count 3 of the superseding indictment, Abercrombie was charged with first-degree sexual abuse, victim under twelve years old, in a continuing course of conduct. KRS 510.110 sets forth the elements of first-degree sexual abuse in pertinent part:

(1) A person is guilty of sexual abuse in the first degree when:

. . .

(b) He or she subjects another person to sexual contact who is incapable of consent because he or she:

. . .

2. Is less than twelve (12) years old[.]

KRS 510.010(7) defines "sexual contact" as:

12

the touching of a person's intimate parts or the touching of the clothing or other material intended to cover the immediate area of a person's intimate parts, if that touching can be construed by a reasonable person as being done:

(a) For the purpose of sexual arousal or gratification of either party;

(b) For a sexual purpose; or

(c) In a sexual manner for the purpose of:

> 1. Exacting revenge or retribution;
>
> 2. Humiliating or degrading; or
>
> 3. Punishment[.]

In *Bills*, this Court approvingly quoted the following examples of sexual contact from the commentary to KRS 510.010(7): "such acts as the manipulation of genitals, digital penetration of the vagina, and non-consensual fondling of a woman's breast; it would also include such acts as removing a child's undergarments." 851 S.W.2d at 471.

We conclude the evidence presented at trial was sufficient to sustain the conviction of first-degree sexual abuse. A.R. testified that Abercrombie touched her on "the pee-pee and the butt." She also stated that Abercrombie touched her "up here" while pointing with both hands to her chest. Additionally, A.R. testified he removed her clothing before the acts of molestation occurred. These incidents support more than two separate and distinct convictions of first-degree sexual abuse. We conclude the trial court properly denied the motion for directed verdict.

13

### III. The jury instructions failed to adequately differentiate between the charged offenses.

Finally, Abercrombie contends the jury instructions violated his right to a unanimous verdict and the prohibition against double jeopardy. He concedes these arguments are unpreserved and requests palpable error review under RCr[4] 10.26, which provides:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"'Manifest injustice' is error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Davidson v. Commonwealth,* 548 S.W.3d 255, 261 (Ky. 2018) (quoting *Miller v. Commonwealth,* 283 S.W.3d 690, 695 (Ky. 2009)). We agree that palpable error occurred because the instructions for rape, sodomy, and sexual abuse violated double jeopardy by permitting Abercrombie to be convicted twice for the same conduct. Therefore, we must reverse the lesser conviction of sexual abuse. We further conclude the instructions for rape and sodomy violated Abercrombie's right to a unanimous verdict. However, we conclude that reversal of these two convictions is unwarranted because the unanimity error does not rise to the level of manifest injustice.

"Section 7 of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve persons in all criminal cases." *Wells v.*

---

[4] Rules of Criminal Procedure.

*Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978). "[I]t is now settled that a trial court errs in a case involving multiple charges if its instructions to the jury fail to factually differentiate between the separate offenses according to the evidence." *Miller*, 283 S.W.3d at 695. While improper instructions can give rise to a variety of constitutional errors, we have explained

> [w]hether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.

*Miller*, 77 S.W.3d at 576.

The challenged instructions include Nos. 4-7, which state in pertinent part:

- Instruction No. 4

For the purposes of these Instructions, the following words or terms have the following meanings:

> Sexual Intercourse – Means sexual intercourse in its ordinary sense, and includes the penetration of the sex organ of one person by any body part manipulated by another person. Sexual intercourse occurs upon any penetration, however slight: emission is not required.

> Deviate sexual intercourse – Means any act of sexual gratification involving the sex organs of one person and the mouth or anus of another or penetration of the anus of one person by any body part manipulated by another person.

> Sexual Contact – Means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party.

- Instruction No. 5

15

You will find the Defendant guilty of Rape in the First Degree in a Continuing Course of Conduct as charged in Count One of the Indictment under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

> A. That in this county on or about December 30, 2019 through April 7, 2021 and before the finding of the Indictment herein, he engaged in a continuing course of conduct resulting in his having sexual intercourse with A.R. no less than two times[.]

- Instruction No. 6

You will find the Defendant Guilty of Sodomy in the First Degree in a Continuing Course of Conduct as charged in Count 2 of the Indictment under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

> A. That in this county on or about December 30, 2019 though April 7, 2021 and before the finding of the Indictment herein, he engaged in a continuing course of conduct resulting in his having deviate sexual intercourse with A.R. no less than two times[.]

- Instruction No. 7

You will find the Defendant Guilty of Sexual Abuse in the [First] Degree in a Continuing Course of Conduct as charged in Count Three of the Indictment under this Instruction, if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

> A. That in this county on or about December 30, 2019 though April 7, 2021 and before the finding of the Indictment herein, he engaged in a continuing course of conduct resulting in his subjecting A.R. to sexual contact no less than two times[.]

Each instruction charged Abercrombie with engaging in a continuous course of conduct against a vulnerable victim under KRS 501.100. This statute was designed to relieve unanimity issues arising from multiple instances of a

16

particular offense. *Justice v. Commonwealth*, 636 S.W.3d 407, 418 (Ky. 2021), *abrogated on other grounds by Sexton v. Commonwealth*, 647 S.W.3d 227 (Ky. 2022); KRS 501.100(4). Thus, in the present appeal, the jury did not have to agree on which two or more instances of rape occurred; which two or more instances of sodomy occurred; and which two or more instances of sexual abuse occurred.

Nevertheless, by its plain terms, KRS 501.100 does not alleviate the failure to differentiate between separately charged offenses. *Id.* at 417. In *Johnson v. Commonwealth*, 864 S.W.2d 266, 277 (Ky. 1993), as in present appeal, the defendant was charged with rape, sodomy, and sexual abuse. In that decision, the jury instructions differentiated between rape and sexual abuse only by substituting the terms "sexual contact" and "sexual intercourse" for one another. *Id.* We held these instructions were erroneous because

> sexual abuse in the first degree is a lesser-included offense of both rape in the first degree and sodomy in the first degree, while at the same time it was in this case a primary charge of the indictment, relating to a separate instance of sexual contact (the insertion of the foreign objects and the touching of the breasts). The instruction, couched in general terms of "sexual contact" without differentiating the act from those acts constituting rape and sodomy, permitted the jury to find Johnson guilty twice for the same act, e.g., intercourse constituting rape and intercourse constituting sexual contact and, therefore, sexual abuse.

*Id.* at 277.

In the present appeal, as in *Johnson*, the sole distinction between the instruction for first-degree rape and the instruction for first-degree sexual abuse was the substitution of the terms "sexual intercourse" and "sexual

17

contact." Additionally, the instructions defined "sexual intercourse" to include "the penetration of the sex organ of one person by any body part manipulated by another person." A.R.'s trial testimony demonstrated both ordinary intercourse and the touching of the vagina. Thus, the touching of A.R.'s vagina could have convinced a reasonable juror to conclude that the same act could constitute both sexual intercourse and sexual contact.

Factual differentiation is imperative in this context because "[t]he addition of penetration by 'any body part' enacted by the 2018 General Assembly" into the definition of sexual intercourse "comes close to merging the crimes of Rape and Sexual Abuse." 1 Cooper & Cetrulo, *Kentucky Jury Instructions* § 4.01 (2023). Given the inevitable overlap of these charges, trial courts must include "some distinction between abusive acts, however trivial, minute, or obscure." *See King*, 554 S.W.3d at 355. Because the instructions for rape and sexual abuse did not contain any factual differentiation, we are constrained to conclude they are erroneous under *Johnson*. Further, we cannot accept the Commonwealth's suggestion that its reference to Abercrombie's touching of A.R.'s breasts in closing argument cured the deficient instructions. *Dixon v. Commonwealth*, 263 S.W.3d 583, 593 (Ky. 2008) ("[T]he arguments of counsel are not sufficient to rehabilitate otherwise erroneous or imprecise jury instructions."). Our precedents maintain that a double jeopardy violation necessarily results in manifest injustice. *Cardine v. Commonwealth*, 283 S.W.3d 641, 651 (Ky. 2009). The remedy for a double jeopardy violation is to reverse or vacate the lesser offense. *See Clark v.*

18

*Commonwealth*, 267 S.W.3d 668, 678 (Ky. 2008). Therefore, Abercrombie's conviction for first-degree sexual abuse must be reversed. To be clear, the reversal of the sexual abuse conviction will not affect Abercrombie's overall sentence because we are affirming his remaining convictions for rape and sodomy. The trial court properly imposed the jury's recommended sentence of consecutive 50-year sentences as reduced to the statutory cap of 70 years' imprisonment.

Although we are reversing Abercrombie's sexual abuse conviction for impermissible overlap with the rape instruction, we will also briefly address the erroneous overlap between the sexual abuse and sodomy instructions to the extent it constitutes a separate double jeopardy violation and calls the validity of the sodomy conviction into question. *See King*, 554 S.W.3d at 355. Again, the inclusion of the "any body part" language in the definition of deviate sexual intercourse comes close to merging the crimes of sodomy and sexual abuse. See 1 *Cooper & Cetrulo*, at § 4.01. The expansion of the definition of deviate sexual intercourse to include digital penetration of the anus distinguishes the present appeal from our decision in *Mash v. Commonwealth*, 376 S.W.3d 548, 559 (Ky. 2012). In *Mash*, we described the difference between sodomy and sexual abuse:

> First-degree sexual abuse is properly classified as a lesser included offense of first-degree sodomy. *Johnson v. Commonwealth,* 864 S.W.2d 266, 277 (Ky. 1993). The distinction between the two offenses is the body part touched for purposes of sexual gratification. Sexual abuse requires "sexual contact," KRS 510.110, which means "touching of the sexual or other intimate parts of a person," KRS 510.010(7). Sodomy, on the other hand,

19

requires "deviate sexual intercourse," KRS 510.070, which means "any act of sexual gratification involving the sex organs of one (1) person and the mouth or anus of another," KRS 510.010(1). *The additional element in a sodomy offense is the specific sexual or intimate parts involved, namely, the mouth or anus.*

(Emphasis added). Thus, "[w]hether . . . convictions for sodomy and sexual abuse violate double jeopardy depends on whether the sexual abuse was incidental to the sodomy or a separate criminal act." *King*, 554 S.W.3d at 357. Here, the amended indictment alleged that Abercrombie committed first-degree sodomy "by inserting his finger(s) into A.R.'s anus and/or by performing oral sex on A.R." A.R.'s trial testimony described both anal intercourse and touching of the anus. Because the definitions in the present appeal do not distinguish sodomy and sexual abuse by the body part used, the touching of A.R.'s anus could have convinced a reasonable juror that the same act constituted sodomy and sexual abuse. Therefore, the sexual abuse conviction was also subject to reversal as the lesser offense on this basis.

Moreover, the inclusion of the "any body part" language in the definition of sexual intercourse fails to adequately differentiate between the charges of rape and sodomy in the present appeal because the evidence of oral-genital contact could have induced a reasonable juror to conclude the same act satisfied the definitions of both sexual intercourse and deviate sexual intercourse. *Compare* KRS 510.010(8) (defining "sexual intercourse" as "sexual intercourse in its ordinary sense and includes penetration of the sex organs of one person by any body part or a foreign object manipulated by another person[,]"), *with* KRS 510.010(1)(defining "deviate sexual intercourse" as "any

20

act of sexual gratification involving the sex organs of one person and the mouth or anus of another; or penetration of the anus of one person by any body part or a foreign object manipulated by another person."). Because [s]exual intercourse occurs upon any penetration, however slight[,]" A.R.'s testimony that Abercrombie placed his mouth on her "pee-pee" could conceivably constitute rape. See KRS 510.010(8); KRS 510.040. Indeed, "it is sometimes elaborated that penetration between the labia or of the vulva will suffice. Entry of the vagina . . . is not necessary." 2 Wayne R. LaFave, *Subst. Crim. L.* § 17.2(a) (3d ed. 2023). With such a broad definition of sexual intercourse, it was incumbent upon the trial court to prevent overlap between the rape and sodomy instructions by some degree of factual differentiation. We view this impermissible overlap between the rape and sodomy instructions as strictly a unanimity problem, as opposed to a double jeopardy violation because the statutes for first-degree rape and first-degree sodomy satisfy the *Blockburger*[5] test.

In Kentucky, the test for double jeopardy is whether "each statute requires proof of a fact the other does not. Put differently, is one offense included within another?" *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996) (internal citation omitted) (adopting the test set forth in *Blockburger*, 284 U.S. at 304)). Clearly, first-degree rape requires proof of sexual intercourse while first-degree sodomy requires proof of deviate sexual intercourse.

---

[5] *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

21

*Compare* KRS 510.040 *with* KRS 510.070. Thus, there is no situation where first-degree rape and first-degree sodomy could be lesser included offenses of each other. Likewise, we fail to discern, and Abercrombie has not claimed, any statutory double jeopardy violation relating to the jury instructions. KRS 505.020; *see also King*, 554 S.W.3d at 356-57.

Having determined the rape and sodomy instructions contained a unanimity error as opposed to a double jeopardy violation, we must determine whether the error was palpable. In our recent decision in *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023), this Court recently set forth the appropriate standard:

> In all cases presenting an unpreserved error regarding a unanimous jury, the courts must "plumb the depths of the proceeding" and scrutinize the factual idiosyncrasies of the individual case. That includes a consideration of the weight of the evidence. Only if, upon review, a court can conclude "the error is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process," will reversal be warranted. "It should be so egregious that it jumps off the page ... and cries out for relief."

In other words, "reversal is not the universal, essential result of a unanimous verdict error. Where manifest injustice will not result, this Court can find no palpable error." *See Sexton v. Commonwealth*, 647 S.W.3d 227, 232 (Ky. 2022).

Despite the shortcomings of the instructions, we cannot conclude the error "cries out for relief" or has otherwise impugned the fairness and integrity of the judicial process. In the present appeal, Abercrombie was afforded proper notice of the distinction between the rape and sodomy allegations. There is no indication, by indictment or argument, that the evidence of oral-genital contact

22

was used as proof of rape. Further, the evidence for the sodomy conviction was overwhelming. A.R. testified to separate instances of anal intercourse, oral-genital contact, and oral-anal contact. While the evidence of a continuing course of rape depended on circumstance and inference, we nevertheless perceive no manifest injustice in the context of a latent unanimity issue as between the rape and sodomy instructions when the error clearly had no bearing on the jury's verdict. Therefore, we affirm Abercrombie's convictions for first-degree rape and sodomy.

While the reversal of Abercrombie's conviction of first-degree sexual abuse will not diminish his total sentence[6], this double jeopardy violation was totally unnecessary because there was clearly sufficient evidence to distinguish the instruction for sexual abuse from those for rape and sodomy. This Court has repeatedly demonstrated that instructional errors of this nature are easily "avoided by simply differentiating each individual jury instruction by incorporating into each instruction whatever distinguishing feature was presented in the evidence." *King*, 554 S.W.3d at 353. We further implore trial courts to exercise caution when including the "any body part" language in definitional instructions for sexual intercourse and deviate sexual intercourse. Instructions should only include this verbiage "if warranted by the facts of the particular case." 1 *Cooper & Cetrulo*, at § 4.01.

---

[6] Again, our affirmance of Abercrombie's rape and sodomy convictions validates the sentence imposed for these offenses.

23

## IV. Conclusion

Accordingly, the judgment of the Bracken Circuit Court is affirmed in part, reversed in part, and remanded for dismissal of the first-degree sexual abuse charge.

All sitting. VanMeter, C.J.; Bisig, Conley, Lambert, Nickell, and Thompson, JJ., concur. Keller, J., concurs in result only.

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General

24